UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
GERALD FREID, ANDREA NOBLE )
BARRY FREID and LISA ALLEN, )
 )
      Plaintiffs, )
 )
v. )    Civil Action No. 09-10928-DJC
 )
MARVIN GORDON and )
RUTH HINERFELD, )
 )
      Defendants. )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**        March 25, 2011

### I.    Introduction

Plaintiffs Barry Fried, Gerald Freid, Andrew Noble and Lisa Allen (collectively, the "Freids" or the "Freid Family") bring this action against Marvin Gordon and Ruth Hinerfeld (collectively, the "Gordon/Hinerfelds" or the "Gordon/Hinerfeld Family"), alleging breaches of fiduciary duty as managers of Morris Holdings, a limited liability company, for their failure to approve a four million dollar distribution of funds. The Gordon/Hinerfelds move for summary judgment; the Freids have countered, seeking summary judgment in their favor. For the reasons set forth below, the Gordon/Hinerfelds' motion for summary judgment is GRANTED.

### II.    Procedural History

On April 28, 2009, the Freids filed the instant complaint in Suffolk Superior Court claiming that the Gordon/Hinerfelds breached their fiduciary duty to the Freids by declining to agree to a $4 million cash distribution from Morris Holdings (Count I) and that Marvin Gordon, as trustee of the

1

Whitehall Pension Trust, breached his fiduciary duty to the Freids by failing to meet regularly with the pension trust's actuarial consultant or its investment advisor about investing the pension funds, resulting in monetary loss (Count II). On June 3, 2009, the Gordon/Hinerfelds removed this action to this Court, asserting subject matter jurisdiction under 28 U.S.C. § 1331. After the Gordon/Hinerfelds moved for summary judgment to dismiss the complaint in its entirety under Fed. R. Civ. P. 56, the Freids cross-moved for summary judgment in their favor. This matter was transferred to this session on January 25, 2011 and the Court heard oral argument on March 22, 2011. Due to Plaintiffs' voluntary dismissal of Count II at oral argument, the Court need not address that claim.

### III. Factual Background

The material facts are undisputed.[1] Members of the Gordon/Hinerfeld Family and the Freid Family were shareholders in a company called Whitehall Company, Ltd. ("Whitehall"), a liquor wholesaler. The Gordon/Hinerfeld Family owned 54% and the Freid Family owned 46% of the stock in Whitehall. Whitehall had a pension benefit plan for its employees ("Whitehall Pension Plan"). Marvin Gordon, one of the Defendants, is the sole Trustee of the Whitehall Pension Trust.

When most of Whitehall's assets and liabilities were sold in 2002, there still remained pension beneficiaries who would be due pension payments under the Whitehall Pension Plan. The assets and liabilities of Whitehall that were not sold were transferred to three successor entities – Morris Holdings LLC ("Morris Holdings"), Gordon Logistics LLC ("Gordon Logistics") and

---

[1] Although Plaintiffs did not respond to Defendants' Statement of Material Facts as required by Local Rule 56.1, Plaintiffs' counsel conceded at oral argument that the material facts are undisputed.

Milton's Distributing Co., Inc. ("Milton's Distributing"). Each of these entities was owned in the same manner as Whitehall had been: 54% owned by the Gordon/Hinerfeld Family and 46% by the Freid Family. Morris Holdings received the land and building of Whitehall's that constituted the headquarters and a warehouse. In 2008, Morris Holdings sold that property for $9.2 million. After the sale, Morris Holdings had total assets of approximately $10.5 million, mostly in cash or cash equivalents.

As to the pension fund, the three entities agreed among themselves to pay into the Whitehall Pension Plan the annual amounts required by law to reduce the unfunded liability of that plan in the following ratio: Morris Holdings 67.7%, Gordon Logistics 31.6% and Milton's Distributing 0.7%. The unfunded pension liability fluctuates based on actual investment performance of the assets held in the Whitehall Pension Trust, government mandated assumptions regarding the future rate of return on those assets which change from time to time, the actual mortality experience of individual pension beneficiaries and the actuarial estimates of the future pension obligations based on age, compensation, length of service, and life expectancies of individual pension plan beneficiaries.

The parties' dispute here concerns a proposed distribution of funds from Morris Holdings to the parties in 2009. In April of that year, the Freids proposed that Morris Holdings make a cash distribution of $4,000,000 to its members, the parties in this case. Since the distributions from Morris Holdings, a Delaware limited liability company, are payable 54% to members of the Gordon/Hinerfeld Family and 46% to members of the Freid Family, both parties to this lawsuit would have benefitted from the distribution, with the defendants taking the greater percentage. The Morris Holdings Limited Liability Agreement, dated March 8, 2002, (the "Morris Holdings Agreement") requires that "[a]ll management decisions for the LLC that in Whitehall would have

required action by the Board of Directors, shall require action by the vote of not fewer than 3 of the Managers." Section 1(b). Accordingly, the parties put the Freids' proposed distribution to the vote of the four managers of Morris Holdings--Plaintiffs, Gerald Freid and his sister, Andrea Noble, and Defendants Marvin Gordon and his sister, Ruth Hinerfeld.

Plaintiffs Gerald Freid and Andrea Noble voted in favor of the proposal and defendants Marvin Gordon and Ruth Hinerfeld, who would have had the greater (54%) share of the distribution, voted against it. At the time of the rejection of the $4 million proposed distribution to the parties, the assets of Morris Holdings were in the range of $10.5 million, but the unfunded pension liability of Whitehall Pension Plan was still approximately $9,322,000.

Later in April 2009, after the vote rejecting the distribution, Mr. Gordon alternatively proposed that Morris Holdings make a lesser distribution of $1,000,000 distribution and that the Morris Holdings' Managers revisit the question of additional distributions in a year.[2] The Freids rejected that offer and instead filed this action on April 28, 2009.

**IV.    Discussion**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Here, as evidenced by the cross motions for summary judgment of both parties and plaintiffs' concession at oral argument, there are no disputed issues of material fact. Because the only issues to be decided are legal issues, the Court may proceed to determine which party is entitled to summary judgment as a matter of law. See Brandley v. U.S. Fidelity & Gaur. Co., 819 F. Supp. 101, 103 (D. Mass. 1993); Com. of Mass.,

---

[2]In April 2010, pursuant to an agreement by all Managers, Morris Holdings made a $500,000 distribution to its members.

by Dep't of Public Welfare v. Yeutter, 756 F. Supp. 48, 49 n. 1 (D. Mass. 1991).

Although counsel for the Freids at oral argument disputed that Delaware law should apply to this matter, it appears well settled that claims involving the internal affairs of a corporation are governed by the law of the state in which the relevant corporation is incorporated. Mariasch v. Gillette Co., 521 F.3d 68, 72 (1st Cir. 2008); see Harrison v. NetCentric Corp., 433 Mass. 465, 470 (2001); Massaro v. Vernitron Corp., 559 F. Supp. 1068, 1080 (D. Mass. 1983). As the First Circuit explained, "only one State should have the authority to regulate a corporation's internal affairs . . . because otherwise a corporation could be faced with conflicting demands." Mariasch, 521 F.3d 68, 71 (quoting Edgar v. MITE Corp., 457 U.S. 624, 645 (1982)). The Freids' claims involving breaches of fiduciary duties are matters pertaining to the internal affairs of a corporation. See, e.g., Harrison, 433 Mass. at 470; Beacon Wool Corp. v. Johnson, 331 Mass. 274, 279-80 (1954). Since the Freids' claim is based on the Gordon/Hinerfeld's alleged breaches of fiduciary duty as managers of Morris Holdings, a limited liability company incorporated in Delaware, Delaware law governs here.[3]

### A. Count I: Breach of Fiduciary Duty Regarding the Cash Distribution

Under Section 1(b) of the Morris Holdings Agreement, "[a]ll management decisions for the LLC that in Whitehall would have required action by the Board of Directors, shall require action by the vote of not fewer than 3 of the Managers." In neither their complaint nor their opposition/cross motion for summary judgment do the Freids contest that a cash distribution falls within the purview

---

[3]The Court also notes that Section 11(b) of the Morris Holdings Agreement expressly states that the "Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted, construed and enforced in accordance with the laws of the State of Delaware." Because the Freids' breach of fiduciary duty claim is based on the Gordon/Hinerfelds' vote, pursuant to Section 1(b) of that Agreement, against the larger cash distribution, the Agreement also dictates that Delaware law applies here.

of a "management decision" under Section 1(b) requiring the vote of no fewer than three of the Managers. The Freids did not receive the three votes necessary to approve the proposed cash distribution and as a result, no distribution occurred.

Since the proposed cash distribution was disapproved in accordance with a vote governed by the Morris Holdings Agreement, the decision to oppose the cash distribution is protected by the business judgment rule and it cannot be disturbed unless the Gordon/Hinerfelds breached their fiduciary duties of loyalty or care. The business judgment rule creates a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984). The plaintiff has the burden of rebutting this presumption by providing evidence that directors breached either or both of their fiduciary duty of care and loyalty. Sutherland v. Sutherland, No. 2399-VCN, 2010 WL 1838968, at *9 (Del. Ch. May 3, 2010). If the plaintiff fails to meet this burden, "the business judgment rule attaches to protect corporate officers and directors and the decisions they make, and [the] courts will not second-guess these business judgments." Cede & Co. v. Technicolor, Inc., 634 A.2d 346, 361 (Del. 1993).

Applying the rebuttable presumption that the Gordon/Hinerfeld Managers made their business decision on an informed basis, in good faith, and in the best interest of Morris Holdings, the Court turns to whether the Freids have proven that the Gordon/Hinerfelds have breached their fiduciary duties. The Court concludes that they have not done so.

### 1.  Breach of Fiduciary Duty of Care

Like corporate directors, managers of a limited liability company owe a fiduciary duty of care and loyalty to the company and its members. See, e.g., Minnesota Invco of RSA No. 7, Inc. v. Midwest Wireless Holdings LLC, 903 A.2d 786, 797-98 (Del. Ch. 2006). The duty of care relates to the process by which directors makes a decision. Brehm v. Eisner, 746 A.2d 244, 264 (Del. 2000). "The duty of the directors of a company to act on an informed basis . . . forms the duty of care element of the business judgment rule." Cede, 634 A.2d at 367. To be informed, the directors need not know every fact, but are required to consider the material facts that are reasonably available at the time. Brehm, 746 A.2d at 260. Material facts are only those facts that are "relevant and of a magnitude to be important to directors in carrying out their fiduciary duty of care in decisionmaking." Id. at 260 n. 49. The standard for determining whether the directors' decision was "informed" is one of gross negligence. Citron v. Fairchild Camera & Instrument Corp., 569 A.2d 53, 66 (Del. 1989). Gross negligence must amount to "conduct that constitutes reckless indifference or actions that are without the bounds of reason." McPadden v. Sidhu, 964 A.2d 1262, 1274 (Del. Ch. 2008).

The Freids argue that Morris Holdings could have afforded to make a substantial distribution based on the "Updated Asset Liability Study" ("the Study") of the Whitehall Pension Trust from 2010. The Freids assert that the study shows the pension shortfall was $5,356,103 as of February 1, 2011, that it will decrease to $3,876,423 in February 2012 and subsequently to $2,073,402 in 2014. The Freids asks this Court to consider these results and conclude that there will be sufficient cash in Morris Holdings to make a $4 million cash distribution to its members and to cover any payments to the Whitehall Pension Plan. Even if the results of the Study were accurate, the Gordon/Hinerfelds had no opportunity to review these results or consider them when they voted

7

against the cash distribution in April 2009. The Study had not even been conducted before April 2009. Moreover, it cannot be said that the Gordon/Hinerfelds' decision regarding the cash distribution was not rational where, at the time of the vote in April 2009, the unfunded pension liability still exceeded $9 million. In light of these undisputed facts, the Freids have failed to present any evidence or allege any facts to demonstrate that the Freids breached their duty of care at the time they voted against the cash distribution.

### 2. Breach of Fiduciary Duty of Loyalty

"[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer, or controlling shareholder and not shared by the stockholders generally." Cede, 634 A.2d at 361. Any corporate decision which directly or indirectly confers a benefit upon a participating director can implicate the duty of loyalty. In re ALH Holdings LLC, 675 F. Supp. 2d 462, 482 (D. Del. 2009). The duty of loyalty also arises when a relationship with an interested party may affect the independent judgment of a director. Id.

The Freids argue that Mr. Gordon's fiduciary duties with respect to Morris Holdings, Gordon Logistics, and Milton's Distributing Co., Inc., the Freids, and the beneficiaries of the Whitehall Pension Plan, so greatly conflict with one another that Mr. Gordon has breached his duty of loyalty and, as a result, is not protected by the business judgment rule. The Court is unpersuaded. First, as Plaintiffs' counsel conceded at oral argument and as Mr. Freid admitted in his deposition, the Freids owe fiduciary obligations to the Whitehall Pension Plan beneficiaries and Morris Holdings in the same manner as the Gordon/Hinerfelds. Thus, the Freids are in no different position than the Gordon/Hinerfelds in this regard.

Second, the mere fact that Mr. Gordon maintains multiple fiduciary duties does not alone

create a conflict of interest. See, e.g., Unocal Corp. v. Mesa Petroleum Co., 493 A.2d 946, 958 (Del. 1985) (rejecting that directors become "interested" merely because they are also large stockholders in the company). Rather, it is only when a fiduciary makes a decision to further his own self-interest at the expense of those to whom a fiduciary duty is owed that the business judgment rule affords him no protection. Citron, 569 A.2d at 65-66; Giammalvo v. Sunshine Min. Co., No. 12842, 1994 WL 30547, at *10 (Del. Ch. 1994).

The Freids have failed to identify how the Gordon/Hinerfelds' decision to vote against the cash distribution can be properly called self-interested behavior or that the Gordon/Hinerfelds derived some personal benefit from their decision. To the contrary, the Gordon/Hinerfelds voted against their own self-interest by opposing a significant contribution to themselves - a distribution that, as 54% shareholders, would have resulted in a larger payment to the Gordon/Hinerfeld Family than to the Freid Family. The Freids cite no authority, nor is this Court aware of any such authority, that the existence of several fiduciary duties without any self-interested action on the part of the fiduciary amounts to a breach of his duty of loyalty.

The Freids' argument that Mr. Gordon voted against the cash distribution in order to retain funds in Morris Holdings as a means of protecting himself, individually, when Gordon Logistics can no longer afford to make its payments to the Whitehall Pension Plan is equally unavailing. Each entity - Morris Holdings, Gordon Logistics, and Milton's Distributing - is liable for the unfunded pension liability and each entity is 54% owned by the Gordon/Hinerfeld Family and 46% by the Freid Family. Therefore, if any of these entities were to have insufficient funds to contribute to the Whitehall Pension Plan, both families, not only Mr. Gordon, would be liable to cover the deficit - the Freids 46% liable and the Gordon/Hinerfelds 54% liable. Further, Morris Holdings' contribution

9

(67.7%) to the Whitehall Pension Plan is twice that of Gordon Logistics (31.7%). Thus, retaining sufficient funds in Morris Holdings protects both families who would otherwise be liable for the failure of Gordon Logistics to make payments to the Whitehall Pension Plan.

Moreover, even if Mr. Gordon had a conflict of interest and was precluded from voting on the cash distribution proposal as a result, Morris Holdings would still not have been able to make the distribution. The Morris Holdings Agreement expressly states that at least three Managers must vote in favor of any proposal for Morris Holdings to take an affirmative action. If Mr. Gordon abstained from voting, Ms. Hinerfeld and the Freids would have all needed to vote in favor of the $4 million cash distribution for the distribution to occur. However, like Mr. Gordon, Ms. Hinerfeld voted against the distribution, leaving the Freids with only their own two votes in favor of the cash distribution. Because two votes was insufficient to obtain approval, Morris Holdings could not have made the cash distribution even without Mr. Gordon's vote.

## V.     Conclusion

For the foregoing reasons, summary judgment in favor of the Gordon/Hinerfelds is GRANTED. The Freids' Cross-Motion for Summary Judgment is DENIED. Further, this matter is hereby DISMISSED.

**So ordered.**

                                              /s/ Denise J. Casper
                                              United States District Judge